No. 29,164.

JOHN SKIBBIE, *Appellee,* v. THE LIBERTY'LIFE INSURANCE COMPANY, *Appellant.*

(285 Pac. 581.)

Opinion filed March 8, 1930.

*Stephen H. Allen, Otis S. Allen* and *George S. Allen,* all of Topeka, for the appellant.

*Sylvan Bruner, C. S. Denison* and *E. V. Bruce,* all of Pittsburg, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: In this action the plaintiff recovered judgment against the defendant on a health and accident insurance policy, and the defendant appeals.

The plaintiff alleged that the defendant had issued to him, on August 26, 1927, a policy insuring him "against disability resulting from external, violent, and accidental means"; that on the 5th day of December, 1927, he was externally, violently, and accidentally injured in the manner set out in the petition; that at the expiration of the first month of disability arising from the accident, but before it was discerned that the disability was permanent in character, the defendant paid to the plaintiff the sum of fifty dollars under the policy; and that since that time the defendant has neglected,

failed and refused to pay the plaintiff any further sum. The plaintiff asked judgment for $2,300.

The policy contained the following provisions:

"Part 1. The Liberty Life Insurance Company . . . will maintain this policy in force against—

"Part 2. (1) The effect resulting exclusively of all other causes from bodily injury sustained during the life of this policy solely through external, violent and accidental means . . . subject to all the conditions, limitations and exclusions and within the amounts hereinafter expressed, said bodily injury so sustained being hereinafter referred to as 'such injury,' and,

"(2) Disability resulting from illness which is contracted and begins during the life of this policy and after it has been maintained in continuous force for fifteen days from its date, subject to all the conditions, limitations and exclusions and within the amounts hereinafter expressed, said illness so contracted and beginning, being hereinafter referred to as 'such illness,' as follows:

"Part 3. Principal sum, $200; monthly accident indemnity, $50; monthly sickness indemnity, $50.

. . . . . . . . . . . . . . . . .

"Part 5. Or if such bodily injury shall not result in any of the losses enumerated in Part 4, but shall from the date of such injury directly, wholly and continuously disable and prevent the insured from attending to any and every kind of duty pertaining to any gainful occupation, the company will pay him the monthly indemnity specified in Part 3 so long as the insured lives and suffers such total disability, not exceeding twenty-four consecutive months.

"Part 6. If any such sickness contracted by the insured, during the term of this policy, or any renewal thereof, and not herein excepted, and for which the insured is regularly treated by a legally qualified physician, necessarily and continuously prevents the insured from performing any and every kind of duty pertaining to any gainful occupation, the company will pay the insured for the period of total loss of time not exceeding six consecutive months, the monthly indemnity specified in Part 3.

. . . . . . . . . . . . . . . . .

"Part 9. Standard Provisions. . . . (7) Affirmative proof of loss must be furnished to the company at its said office in case of claim for loss of time from disability within ninety days after the termination of the period for which the company is liable, and in case of claim for any other loss, within ninety days after the date of such loss. . . . (9) All indemnities provided in this policy for loss, other than that of time on account of disability, will be paid within thirty days after receipt of due proof.

"(10) Upon request of the insured and subject to due proof of loss, all of the accrued indemnity for loss of time on account of disability will be paid at the expiration of each thirty days during the continuance of the period for which the company is liable and any balance remaining unpaid at the termination of such period will be paid immediately upon receipt of due proof. . . .

"(14) No action at law or in equity shall be brought to recover on this policy prior to the expiration of sixty days after proof of the loss has been

filed in accordance with the requirements of this policy, nor shall such action be brought at all unless brought within five years from the expiration of the time within which proof of loss is required by the policy.

"Part 10. Additional Provisions. . . . (6) If the insured is disabled for more than 30 days he or his representative shall furnish the company every 30 days, or as near thereto as may be reasonably possible, a report in writing from the attending physician or surgeon fully stating the condition of the insured and the probable duration of disability."

The answer consisted of a denial of the allegations of the petition. No affirmative defense was pleaded. The abstract of the defendant contains the following:

"After the accident Mr. Hunsaker, the agent of the Liberty Life Insurance Company who took his [plaintiff's] application, saw him. He gave him a report blank which he sent in. Following that he received $50 from the Liberty Life Insurance Company. The company also had him examined by two doctors, Doctor McKay and Doctor Ulric. He also testified that a few days before the trial defendant's attorney requested him to go to Doctor Smith's office in Pittsburg for an examination, but that when the attorney learned that Doctor Smith had taken some X-ray pictures 'he said that was all he wanted.' "

The counter abstract discloses that the defendant in its trial statement to the jury said:

"Gentlemen of the jury, the reason that the defendant refused to pay the plaintiff any more than $50 on his claim, in this cause, is that the defendant had the plaintiff examined by doctors, and that such examination disclosed that his disability was not due to an accident, but is due to an overexertion and lame or sprained back on his part, and his claim therefore comes within what is known as the monthly illness indemnity clause of the policy, which provides for only six months indemnity at the rate of $50 per month, and the plaintiff is not entitled to recover any more, and the defendant is entitled to have credited on such sum the sum of $50 already paid by the defendant to plaintiff."

The jury answered special questions as follows:

"1. Was the plaintiff disabled as the result of an injury received on December 5, 1927? A. Yes.

"If you answer the foregoing question affirmatively, then answer the following:

"1. Was his disability caused by lifting an empty coal car in a coal mine? A. Yes, and by slipping on some obstacle, coal or slate, etc.

"2. Was said disability caused solely on account of lameness in his back? A. No.

"3. If you answer the last preceding question 'No,' then state what else caused his disability. A. Injury to back, right hip and right leg.

"4. Did plaintiff sustain any breaks or subluxations by reason of the injury received on December 5, 1927? A. Evidence does not show.

"5. Has the plaintiff been afflicted from pyorrhea since he become disabled?
A. Yes.

"6. If you answer the next preceding question in the affirmative, state whether the injury was complicated by the poison from the pyorrhea. A. The evidence does not show.

"7. Has plaintiff suffered from rectal trouble since he became disabled? A. No.

"8. Was plaintiff on December 5, 1927, wholly, continuously and permanently disabled and prevented from attending to any and every kind of duty pertaining to any gainful occupation? A. Yes."

■ The principal contention of the defendant is that the plaintiff cannot recover because he did not plead and prove a compliance with the conditions of the policy after the injury was sustained and before this action was commenced. Those conditions concerned the proof of accident and disability. This question was raised by the defendant by a demurrer to the plaintiff's evidence and by requesting that certain questions be submitted to the jury. The defendant also urges that the court failed to instruct the jury that it was necessary for the plaintiff to allege and prove that he had complied with the terms of the policy before he can recover. The plaintiff argues that the defendant waived the policy conditions on which it relies when it made the payment of $50 under the policy. The payment of the $50 will admit of but one construction, and that is, the admission of liability under the policy. In addition to that admission the defendant in its opening statement to the jury admitted liability under the policy to the extent of $300, of which $50 had been paid. That compels the conclusion that there was a waiver of the conditions of the policy which the defendant claims were not complied with.

■ The other proposition urged by the defendant concerns the construction of the terms of the policy. In order not to misstate the contention of the defendant, we quote from its brief as follows:

"Part 10 (2) of the policy provides that disability or loss caused by lame or sprained back, overexertion, etc., shall be considered a sickness, the original cause of such disability notwithstanding, and settlement shall be made in accordance with Part 6."

Part 10 (2), quoted from the policy as set out in the abstract, reads:

"Part 10. Additional Provisions. (2) Disability or loss caused by lame or sprained back, overexertion . . . or any injury complicated with disease shall be considered a sickness, the original cause of such disability notwithstanding, and settlement shall be made in accordance with Part 6."

Part 6, on which the defendant relies, provides indemnity for disability from sickness and has been heretofore quoted; the plaintiff relies on part 5, which provides for indemnity for disability resulting from accident, and has also been quoted. There was evidence which tended to prove and the jury found that plaintiff's disability was caused by accident, resulting in injury to his back, his right hip, and his right leg, and that the accident was caused by his foot slipping on some coal or slate when he attempted to lift a derailed coal-mining car.·

■ The defendant argues that the verdict and judgment are excessive. The judgment was for $1,150. The injury occurred on December 5, 1927. The verdict was rendered on December 14, 1928. The policy provided for twenty-four monthly payments of $50 each, one of which had been made. On eleven payments the plaintiff was entitled to interest. If the question had been properly presented to the trial court the defendant might have been entitled to a discount on the twelve payments that were not yet due. The interest due the plaintiff and the discount the defendant might have had about equaled each other. But this question was not presented to the trial court by the motion for a new trial and is not set out in the specification of errors.

In *Toops v. Atchison, T. & S. F. Rly. Co.*, 128 Kan. 189, 201, 277 Pac. 57, this court said:

"The defendant contends that the verdict ($22,750) was excessive, a contention with which we might be inclined to agree but for the fact that the defendant appears to be in no position at this time to raise the question. No complaint of the amount of the verdict was made by the defendant in its motion for new trial nor in its specifications of error. Under the oft-repeated rule that alleged errors not presented to the trial court cannot be considered here, we are unable to go into this phase of the controversy."

The judgment is affirmed.