No. 30,998.

The Farmers Union Jobbing Association, *Appellant*, v. T. F. Sullivan, *Defendant;* The Homestead Building and Loan Association, Intervener, *Appellee.*

(19 P. 2d 476.)

Opinion filed March 11, 1933.

*W. S. Norris* and *Homer B. Jenkins,* both of Salina, for the appellant.
*John Hamilton Wilson,* of Salina, for the appellee.

The opinion of the court was delivered by

Hutchison, J.: The question here involved is whether a judgment creditor is entitled to the rents and profits of the judgment debtor's property under garnishment proceedings as against a mortgagee to whom the rents and profits had previously and conditionally been assigned in the note and mortgage when executed, where no proceedings had been commenced to foreclose the mortgage or to have a receiver appointed to collect the same. The trial court held in favor of the mortgagee because of the prior assignment of the rents by the owner to the mortgagee, as contained in the note, and the plaintiff, the judgment creditor, appeals.

The plaintiff corporation had regularly obtained in the district court of Saline county a personal judgment against the defendant, T. F. Sullivan, from which no appeal had been taken and on which an execution had been returned unsatisfied. Thereafter, and on or about November 1, 1931, the plaintiff procured the issuance and service of garnishment summonses upon certain tenants of the defendant, Sullivan, occupying four different dwellings and business houses in the city of Salina. All this real estate so rented by defendant Sullivan had been by himself and wife, about five years prior thereto, mortgaged to the Homestead Building and Loan Association, and the note secured by this mortgage contained the following conditional assignment of the rents and profits to the mortgagee as a further security.

"The undersigned hereby assign to the said The Homestead Building and Loan Association the rents and income arising at any and all times from the property mortgaged to secure this note, and hereby authorize the association, at its option, to take charge of said property, collect and receipt for all rents and income, and apply the same on the payments, insurance premiums, taxes, assessments, repairs or improvements necessary to keep the property in tenantable condition, or other charges provided for in this note, provided said payments or charges are in arrears. This assignment of rents to continue in force until the amount secured by this note is fully paid."

The building and loan association, as an intervener, on November 23, 1931, filed in this same case in which the garnishment summons had been issued a verified application, attaching a copy of the note and mortgage, and praying that the court discharge the garnishees and adjudge the association to be entitled to the rents and profits. The application contains, among other allegations, the following:

". . . of which note this applicant remains the owner and holder and which note is unpaid and undischarged, true and correct copies of said note and mortgage with all credits and indorsements thereon being hereto attached and made part hereof . . ."

Prior to the filing of the intervener's application two of the garnishees filed answers to the effect that they each owed defendant Sullivan rent in the sum of $50, and on the same day the application was filed all four tenants filed separate answers in garnishment admitting they were tenants of defendant Sullivan, but the Homestead Building and Loan Association had required and demanded of them the rent under what it claims to be a prior right, and they asked that the building and loan association be made a

party to the proceedings so that they might be protected from further liability by an order of the court.

On the first day of December, 1931, the plaintiff procured the issuance and service of four new garnishment summonses which were served on the same tenants to cover the rent then due and payable. No answers were filed to these processes because the plaintiff, the defendant and the building and loan association made an oral stipulation which was embodied in a journal entry by the court and signed by the attorneys for these three parties. It in substance directed the four tenants to pay their rent to the building and loan association as an agent of the court, as if it were paid into court under garnishment proceedings, to be disposed of by the court in making final disposition of the garnishment proceedings—this to apply to future rents without the issuing of garnishment process or the filing of another application by the intervener and all to be without prejudice to any of the parties in respect to any of the controversies now involved in the proceeding or to any and all the several rights and claims asserted.

On January 8, 1932, the cause was submitted to the court on the verified application, without any evidence being introduced or offered by any party, and the court found "the matters in said application to be true and that said application should be sustained and granted." The verified application stated that all the credits and indorsements are on the attached copies of the note and mortgage, and neither of them shows any credit or indorsement, notwithstanding monthly payments had been coming due thereon regularly for a period of nearly or about five years. Appellant says it is unreasonable to conclude that no payment had been made during the period of five years, and that the court should take judicial notice of the custom of building and loan associations to enter credit for monthly payments in a pass book rather than by indorsing them on the note or mortgage. This may be true, but the trial court did not have the evidence which a pass book might have furnished that might possibly have shown all or nearly all the payments had been made as they became due, and the court could not then have found the allegations of the application to be true as to no payments having been made. The extreme statement in this application, while possibly unreasonable, is not necessary to the decision in this case, but only that some of the payments were in

arrears. No denial was made of this extreme allegation, and no evidence was offered to modify or disprove it.

The verified application was before the trial court very much as a petition attacked by demurrer, in which case the allegations of the petition are accepted as true, regardless of their being extreme, unreasonable or exaggerated. (*Stinson v. Wooster*, 83 Kan. 753, 112 Pac. 610.) Besides, in a matter of this kind, the inference cannot be avoided that the trial court would have recognized the excessive and unreasonable nature of the allegations of the intervener's application if its attention had been called to it in the way it is now being done on review, and error could very properly have been assigned if the opportunity to deny or modify those allegations by pleading or proof had been by the court denied. The record is silent in this respect, but the rule is uniform that alleged errors not brought to the attention of the trial court cannot form a basis for review in a court of appeals. (*Schmitz v. Schmitz*, 125 Kan. 115, 263 Pac. 1045; *Toops v. Atchison, T. & S. F. Rly. Co.*, 128 Kan. 189, 277 Pac. 57; and *Skibbie v. Liberty Life Ins. Co.*, 130 Kan. 121, 285 Pac. 581.)

The paragraph above quoted from the note shows an assignment of the rents at the time the note and mortgage were executed. The mortgagee had the option thereunder of using the assignment or not as it desired, but it was conditioned upon some of the payments or charges being in arrears before such additional security would be available. This is the only purpose for which the allegation of the application as to the failure of payments is necessary. If some payments were in arrears then the assignment at the option of the mortgagee could properly be used. But the appellant insists that such assignment cannot be effective against a garnishing judgment creditor under garnishment proceedings in the absence of foreclosure proceedings or the appointment of a receiver to collect the rents, and cites the case of *Hall v. Goldsworthy*, 136 Kan. 247, 14 P. 2d 659, to show that the demand on the tenants for the rent is not sufficient to establish a right thereto or possession thereof, and that such right can only be established through a proper court procedure. This is conceded to be the general rule, but in the case cited, as well as in those quoted therein, the mortgagor or owner was always found to be resisting the demand and claim of the mortgagee to possess itself of the rents and profits under the assignment, and a court proceeding was therefore necessary to determine whether the mortgagee could, under the assignment, dispossess the owner of the rents and profits. Here

we have the owner or mortgagor joining the mortgagee in making a stipulation with the plaintiff agreeing to the payment of the rent to the mortgagee as the agent of the court to be dispersed later by order of the court and being represented in such stipulation by the same attorney as the one representing the mortgagee, who signed the stipulation journal entry for him and the mortgagee. There is no need of a judicial proceeding when the mortgagor voluntarily consents to the mortgagee obtaining possession of the rents, even as an agent of the court. The assignment provision in the note, even upon default, would be of no avail to the mortgagee without a judicial proceeding or its equivalent, and certainly the voluntary consent of the mortgagor or owner is such equivalent, as it was held in the case cited.

"An agreement to impound the accruing rents after an action has been commenced is, under the circumstances of this case, equivalent to the appointment of a receiver by the court and entitles the plaintiff to the benefit of the stipulation contained in the mortgage." (Syl. ¶ 2.)

In the discussion of the assignment of rents in a mortgage in 41 C. J. it is said—

"Unless acted upon by the parties such provisions do not become effective, however, until the mortgagee actually obtains possession, or until he asserts his rights by securing the appointment of a receiver or impounding the rents and profits pending foreclosure, or taking some action equivalent thereto." (p. 629.)

In the Hall case, above cited, a foreclosure action had been commenced after a demand had been made for possession of the rents, and a few days later an amended petition recited that a stipulation had been entered into between the mortgagor and mortgagee agreeing upon a trustee to whom the rents might be paid until the rights of the parties were determined. It was there held that such agreement had the practical effect of the appointment of a receiver by the court.

In the case of *Capitol B. & L. Ass'n v. Dobson,* 134 Kan. 518, 7 P. 2d 64, by consent of the mortgagor the mortgagee took possession of the mortgaged property for the purpose of collecting rents and applying them on the payments due, and the court upheld such subsequent agreement as a voluntary consent without the pendency of a foreclosure or other judicial proceeding.

Appellant relies upon the positive statement in *Seckler v. Delfs,* 25 Kan. 159, and other similar cases, as to the necessity of an action

being brought to enforce the lien upon the rents and profits, but in the Seckler case there was no voluntary consent given by the mortgagor as there is in the instant case and the Hall case.

It is urged that under the conditions of the mortgage there was no default alleged in the application which would authorize a foreclosure proceeding. This we do not think is applicable to the method pursued, which was not at all in the nature of a foreclosure action. If the voluntary consent given by the mortgagor to the mortgagee as the agent of the court to collect the rents, was equivalent to an action, and avoided the necessity thereof in this case, as we hold it is and does, it properly dated back as a lien under the assignment contained in the note so as to be subject to enforcement and prior to the garnishments from the date of the demand upon the tenants by the mortgagee, when immediately followed by such consent.

We find no error in the finding and judgment of the trial court.

The judgment is affirmed.