## JOHN R. THOMPSON CO. v. NORTHWESTERN MUT. LIFE INS. CO. et al.

No. 5571.

District Court, N. D. Ohio, E. D.

July 3, 1937.

Galvin & Babin, of Cleveland, Ohio, for plaintiff.

Douglas F. Schofield, of Cleveland, Ohio, pro se, and Garfield, Cross, Daoust, Baldwin & Vrooman, of Cleveland, Ohio, for defendants.

WEST, District Judge.

This is a suit under the federal Declaratory Judgment Act, 28 U.S.C. § 400, 28 U.S.C.A. § 400. In their pleadings the plaintiff and the defendants as well seek to have ascertained and declared their several rights growing out of mortgages executed by the former trustee of the Schofield Building to the Insurance Company, a lease subsequently executed by said trustee to the

plaintiff under which possession was taken and which will not expire for several years, an agreement dated Jan. 15, 1932, respecting the management and operation of said building and the collection and application of rents, made between said trustee, the Insurance Company, and Carlton Schultz, Inc., and proceedings by the Insurance Company to foreclose its mortgages. The former trustee has been succeeded by the defendant Douglas Schofield.

■ In its petition plaintiff sets up a covenant of the lease which provided inter alia "that the said lessee on paying the said rent and performing the covenants aforesaid, shall and may peaceably and quietly have and enjoy the said demised premises for the term aforesaid"—a covenant for quiet enjoyment. The covenant has not been breached. 24 Ohio Jur. p. 912 states: "The covenant of quiet enjoyment in a lease relates to an interruption of the possession, and does not regard the title. Hence it is not broken unless there is an eviction from, or some actual disturbance in, the possession by the landlord; or by some third person under paramount title."

■ Plaintiff also alleges it was not made a party to the foreclosure proceeding in which a decree was duly entered, but does not allege sale under such decree consummated by confirmation by the court. The answer of the Insurance Company avers and the proof shows that the foreclosure decree provided that the mortgagor had ninety-three days from its date to make payment; that within this period payment was made and the mortgage indebtedness sued on satisfied and discharged of record.

It is very evident that the mortgagor lost no title to the premises through this proceeding. Gen.Code, § 11688; Willis v. Beeler, 6 Cir., 90 F.2d 538, decided April 13, 1937. And in its brief plaintiff abandons any claim based on the proceedings in foreclosure.

■ It insists, however, that the so-called tri-party agreement of Jan. 15, 1932, and the Insurance Company's alleged possession thereunder, created a paramount title in said defendant, resulting in plaintiff's eviction, which gave it the right to terminate the lease or, at all events, to have it adjudged to be a lease from year to year.

The controversy is not the usual one where the dispute is as to whether the lessor or the mortgagee is entitled to the rents, but the issue presented is whether the plaintiff has been evicted so that it may lawfully terminate the existing lease. It relates to title to the property rather than the right to the rents.

I think the short answer to plaintiff's position is that under the tri-party contract the Insurance Company acquired no title whatever to the real estate, let alone a title paramount to that of the owner. The contract does not relate to title, but only to management and operation of the building and collection and application of the rents. The fact that Carlton Schultz, Inc., was given exclusive power to negotiate leases and collect the rents did not affect or lessen plaintiff's title. Upon collection the rents must be applied for the benefit of the owner in payment of operating expenses and management costs of the building which were bound to consume a very substantial part of the collections; and the balance goes to the Insurance Company to be applied upon the trustee's indebtedness to it. The obligations assumed by the management company were merely such as were necessary to carry out this arrangement. In 36 C.J. § 1003, pp. 271, 272 it is said: "An eviction by title paramount arises where a third person establishes a title to the demised premises superior to that of the landlord, and by virtue of that title gains actual possession of the premises or constructive possession thereof through attornment of the tenant to him. The eviction may arise by ouster of the tenant by physical acts of the holder of the paramount title, or by virtue of legal proceedings instituted by him, or by an attornment to him by the tenant while remaining in possession. An eviction by title paramount does not otherwise arise."

16 R.C.L., § 170, p. 684, states: "To evict a tenant according to the original signification of the word is to deprive him of the possession of the demised premises, but, in the technical use of the term, the eviction of a tenant consists in the disturbance of his possession, his expulsion or amotion, depriving him of the enjoyment of the premises demised or any portion thereof by title paramount, or by the entry and act of the landlord."

Plaintiff's possession under its lease has not been disturbed, nor has it been deprived

in any respect of the enjoyment of the premises demised.

In many of the authorities cited by plaintiff which speak of the remedy of a mortgagee of premises encumbered by lease being either to foreclose upon the mortgagor's default or to take possession, the possession taken otherwise than at completed sale on foreclosure evidently means a possession taken under title that is paramount to the mortgagor's; others refer to possession accompanied by notice to the tenant to pay the rent to the mortgagee, which is sufficient, not to invalidate a lease, but to entitle the mortgagee to the rents. For example, the following is quoted from § 980, Jones on Mortgages: "To entitle the mortgagee to the rents as against the mortgagor, it is not necessary that his entry should be effectual for the purpose of foreclosure, but any possession taken by him with notice to the tenants to pay the rent to him is sufficient."

The Massachusetts cases cited by Jones involved controversies over the rents, not efforts of a lessee to terminate his lease. And the next quotation from the section (derived from an old Maine case [1]): "Where the mortgagor has appointed an agent to receive the rents of the mortgaged estate, a notice to him by the mortgagee to pay the rents when collected to himself is a termination of the mortgagor's tenancy at will, and the agent will hold the rents subsequently accruing as trustee of the mortgagee."

Whatever the significance of the mortgagor's "tenancy at will" may have had under Maine laws, the case is distinguishable in that the mortgagee, who with two others were tenants in common of the premises, notified the agent to pay the rents to himself only. In the present case disposition of the rents is controlled by a contract to which both owner-lessor and mortgagee are parties.

Had the Insurance Company alone notified Schultz to pay over to it the entire rents, the following from Aguglia v. Cavicchia, 229 Mass. 263, 266, 118 N.E. 283, 284, L.R.A.1918C, 59; would apply, even though there eviction by the landlord and not a mortgagee was claimed: "The collection of the rent from the plaintiff's tenants and the notice forbidding them to pay any further rent to him were acts which did not constructively evict him from his estate. 'To constitute an eviction * * * there must either be an actual expulsion of the tenant, or some act of a permanent character, done by the landlord with the intention and effect of depriving the tenant of the enjoyment of the demised premises or some part of it, to which he yields, abandoning the possession within a reasonable time.'" (citing cases).

The two cases cited by plaintiff, Farmers' Union Jobbing Ass'n v. Sullivan, 137 Kan. 196, 19 P.2d 476, and Kershaw v. Squier, 137 Kan. 855, 22 P.2d 468, were also controversies over the rents, not as to whether the lessees had been evicted by the mortgagees. The most that can be claimed for them is that in a controversy involving only the right to rents, where mortgagor and mortgagee, in order to carry out their agreement made when the mortgage was executed, and which assigned the rents for the benefit of the mortgagee, co-operate to carry out the assignment, the mortgagee is not required to establish an eviction of the tenant; for, as said in 137 Kan. at page 857, 22 P.2d at page 469: "It is competent for the mortgagor to yield the possession to the mortgagee and apply the rentals to the defaulted payments of the loan, notwithstanding the mortgagee could not claim that possession as against the mortgagor under the executory contract of the assignment."

These cases do not help the plaintiff, for this is not the kind of dispute they dealt with. Nor does Freedman's Saving & Trust Co. v. Shepherd, 127 U.S. 494, 8 S. Ct. 1250, 32 L.Ed. 163.

Decree will be for the defendants, declaring that plaintiff's lease has not been terminated or affected by the matters alleged; that plaintiff has not been evicted by paramount title or otherwise; that there has been no breach of covenant for quiet enjoyment, and that plaintiff is obligated to defendant as successor trustee under all the terms, conditions, and provisions of said lease of Nov. 9, 1927, as modified; and plaintiff's petition will be dismissed at its costs.

---

[1] Crosby v. Harlowe, 21 Me. 499, 38 Am.Dec. 276.